Gabrielli, J. (dissenting).
I respectfully dissent from today’s holding by the majority. It is abundantly clear that subdivision 2 of section 6305 of the Education Law, and the regulations promulgated thereunder prior to the 1975 amendment of the statute, authorized each community college to charge back an amount of $300 for each nonresident student per year against the student’s home county on account of the college’s capital costs. The effect of the 1975 amendment was simply to provide the trustees of the State University system with the authority to limit the amount each community college can charge back against a county, with a maximum of $300. Prior to the amendment the trustees lacked such authority, and each community college in the State was empowered to charge back the full $300 amount regardless of its needs.
The amendment was adopted by the Legislature in the summer of 1975, and was not approved by the Governor until August 5, 1975. Although it had an effective date of September 1, 1975 (a mere 27 days following its adoption), it was obviously impossible for the trustees to promulgate new regulations and create a functioning system for the processing of charge-back rate requests in time for the fall 1975 semester, for such a system would of necessity involve the complex task of initially assessing the resources and anticipated capital expenditures of each of the 30 community colleges within the State. It is inconceivable that the Legislature intended to foreclose all charge-backs until the new system could be made *415 operational, in view of prior legislative recognition of the importance of the charge-backs to community colleges (see Memorandum of State Executive Department, McKinney’s 1971 Session Laws, p 2466). There is no evidence of such a legislative intent to effectively deny all the colleges the charge-back income and the language of the statute itself does not mandate such a result. The 1975 amendment was intended merely to grant the trustees the authority to regulate the charge-back amounts for each community college, so as to limit charge-backs to an amount reasonably related to the projected needs of each community college. To interpret the amendment as the majority does, to invalidate a charge-back on the grounds that it had not received specific trustee approval at a time when the mechanism for obtaining such approval did not, and indeed could not exist, is to reach an unnecessarily harsh result. The legislation was intended to result in a more careful computation of the charge-back amounts, and not in a complete abrogation of the charge-back system for a semester.
It must be emphasized that the amended statute merely gives the trustees the power to decrease the amount of charge-back funding to which each community college is entitled. It does not require the trustees to decrease the amount that can be charged back, and it does not preclude the trustees from simply approving the maximum charge-back for each and every community college via a mechanism such as the regulations existing prior to the 1975 amendment. The amended statute is obviously not self-effectuating in the sense that the charge-back would be automatically reduced upon the effective date of the amendment; it provides the trustees with a great deal of leeway, and leaves implementation of the statutory objectives to the trustees’ discretion. Faced with the impossibility of constructing the mechanism necessary for separate consideration of each community college’s charge-back request for the fall 1975 semester* the trustees embarked upon the only reasonable course of action open to them, and in effect continued the old regulations until new regulations could be promulgated and an appropriate system developed for handling charge-back requests for subsequent semesters. Thus, in December of 1975, the trustees for the first time issued new regulations pertaining to charge-backs commencing with the spring 1976 semester, and providing for individual consideration of each community college’s particularized needs. No *416 attempt has been made by the State University system to apply these regulations retroactively, and, in fact, the State University has appeared in this case as amicus curiae and, as is recognized by the majority, maintains now, as it had previously ruled, that prior to the promulgation of the new regulations, the old regulations were still in force and were applicable to the fall 1975 semester charge-backs. The interpretation given the statute by the agency charged with implementing it is entitled to great deference (see, e.g., Matter of Howard v Wyman, 28 NY2d 434), and should not be disturbed if such an interpretation is reasonable. In the present case the State University’s interpretation of the statute appears quite reasonable, and I see no reason to discard such an interpretation in favor of one which will apparently call into question the validity of the charge-backs imposed by each of the State’s 30 community colleges for the fall 1975 semester. Such a result is extremely unfortunate and, in my opinion, unnecessary.
Accordingly, I would affirm the order appealed from.
Judges Jasen, Jones and Fuchsberg concur with Judge Cooke; Judge Gabrielli dissents and votes to affirm in a separate opinion in which Chief Judge' Breitel and Judge Wachtler concur.
Order reversed, etc.